**Filimon Castillo PEREZ,
Petitioner-Appellant,**

v.

**George E. SULLIVAN, Warden, and
Attorney General, State of New
Mexico, Respondents-Appellees.**

**No. 85–1842.**

United States Court of Appeals,
Tenth Circuit.

June 9, 1986.

Peter Schoenburg, Asst. Federal Public Defender, Albuquerque, N.M., for petitioner-appellant.

Candice Marie Will, Asst. Atty. Gen. (Paul Bardacke, Atty. Gen., and Dale S. Morritz, Asst. Atty. Gen., with her on brief), Santa Fe, N.M., for respondents-appellees.

Before SEYMOUR, SETH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

Filimon Castillo Perez ("defendant") appeals from an Order of the district court dismissing his petition for a writ of habeas corpus. He contends that a fifteen month delay between his guilty plea in state court on burglary charges, and sentencing following an habitual criminal proceeding violated his Sixth Amendment right to a speedy trial. He further contends that delay in bringing the habitual criminal charge violated his Fifth Amendment right to due process. Those arguments were presented to and rejected by the New Mexico Court of Appeals, which affirmed defendant's conviction and sentence in state district court. The New Mexico Supreme Court denied certiorari. Defendant then petitioned for a writ of habeas corpus from the federal district court. The United States Magistrate reviewed the case, proposed findings, and recommended dismissal. The district court adopted the proposed findings as its own and dismissed defendant's petition with prejudice. This appeal followed. After reviewing the Record and examining defendant's arguments, we affirm.

## BACKGROUND

On February 2, 1981, defendant was indicted by the Bernalillo County, New Mexico, grand jury on one count of commercial burglary and one count of possession of burglary tools. He was arrested and held in the Bernalillo County Detention Center in lieu of bond. At a hearing on May 15, 1981, he pleaded guilty to both counts, and indicated through his counsel that he wished to be sentenced immediately in order to get to the state penitentiary. At that point, the judge asked the prosecutor what the effect of immediate sentencing would be. He responded that, in his opinion, an immediate sentence could not be suspended or run concurrently with any enhancement sentence later imposed pursuant to the New Mexico Habitual Criminal Act, N.M.Stat.Ann. §§ 31–18–17 to 31–18–20 (1978 & Supp.1981). He also advised the court that his office intended to initiate sentence enhancement proceedings against the defendant pursuant to that Act.

The judge was unwilling to impose a sentence upon defendant until the presentence report was prepared and the habitual offender matter resolved. She stated it was her desire to preserve the option of suspending defendant's underlying sentence and crediting his jail time to the enhancement sentence. The court instructed the prosecutor to begin habitual offender proceedings as soon as possible. Neither defendant nor his counsel made any objection to that reasoning or proposed course of action. However, defendant's counsel stated to the prosecutor that defendant would admit to a fourth habitual offender charge, and wanted to be sentenced promptly.

Approximately nine months later, defendant's former counsel learned that defendant was still in the county jail. He informally inquired of the prosecutor why defendant had not been sentenced, and conveyed defendant's continued desire that sentencing proceedings be promptly concluded. Shortly thereafter, on February 23, 1982, the public defender filed a motion for sentencing. A sentence date was set for March 19, 1982, then continued to April 2, 1982, at defendant's request. At the hearing on April 2, 1982, defendant argued that the case against him should be dismissed because of delay in sentencing. The prosecutor responded by outlining difficulties encountered by his office in obtaining information necessary to the habitual criminal proceeding. He represented that his office was seeking evidence of five previous felonies, although it had material for

three offenses which, if established for purposes of the statute, would result in the maximum sentence. He also reiterated his belief that immediate sentencing on the burglary conviction would be detrimental to the defendant with respect to a later enhancement sentence. Defendant's counsel agreed that the matter should be deferred, and the trial judge postponed sentencing, in the defendant's interest.

On that same day, April 2, 1982, the prosecutor's office filed a supplemental information against defendant under the Habitual Criminal Act charging him with five felonies, including the immediate burglary conviction. Defendant was arraigned on April 30, 1982, and indicated he would contest the charge. On May 4, 1982, trial was set for June 2, 1982, on a trailing docket. On May 6 and May 10, 1982, the public defender's office filed motions to dismiss the supplemental information on grounds that the delay in filing violated state rules of criminal procedure and defendant's constitutional right to a speedy trial.

A hearing on those motions was held on May 28, 1982, at which time most of the points which are raised in this appeal were argued to the trial court. The prosecutor explained to the court his office's attempts to obtain evidence of previous convictions considered necessary for the habitual offender proceedings. The prosecutor explained that the task of gathering the necessary documents had been assigned to a paralegal. Testimony from that individual indicated that evidence with respect to three of the prior felony convictions had been obtained by the end of April 1981; part of the evidence with respect to another conviction was received in May of 1981 and the rest on March 15, 1982, after delays which the paralegal was told to expect. Some possibly unnecessary information with respect to another felony conviction was obtained on April 23, 1982. Both the paralegal and the prosecutor in charge of the enhancement proceeding were under the impression that defendant would admit to the supplemental information once it was prepared. When it was learned that defendant would contest the habitual offender charge, a new information was prepared without one of the convictions in question.

The trial court denied defendant's motion to dismiss, finding that the state's delay was justified and in good faith, and not an attempt to circumvent the state time limit rule. The court also found that defendant was not prejudiced by the delay and in fact may have benefited. Due to defendant's motion to dismiss, the June trial setting was continued until August, and on July 15, 1982, the trial was placed on the trailing docket beginning the week of August 3, 1982. On August 19, 1982, defendant's counsel filed a motion to dismiss certain counts of the supplemental information on the grounds that defendant's prior convictions were invalid because his constitutional rights had been violated. Prior to trial, the court granted the motion with respect to one of the prior felony convictions and denied the motion with respect to all others. A jury trial was held on August 24 and 25, 1982. At the conclusion of the state's case, defense counsel renewed the speedy trial and due process motions, which again were denied. The jury found that defendant had been convicted of four felonies as charged in the habitual offender information. The trial judge began the sentencing hearing immediately after the verdict. At the conclusion of the sentencing hearing, the court sentenced defendant to eighteen months on each of the underlying burglary convictions, to be served concurrently. It then suspended execution of those sentences. In addition, the court sentenced defendant to a mandatory eight years of imprisonment pursuant to the Habitual Offender Act, and one year of parole following his release. R.Vol. I at 171. Defendant received credit for 563 days of presentence confinement.

## SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL

A. *Delay in Sentencing on the Burglary Conviction.*

Defendant claims that the fifteen month delay between his guilty plea and final

sentencing violated his right to a speedy trial as guaranteed by the Sixth Amendment.[1] In *Pollard v. United States,* 352 U.S. 354, 361, 77 S.Ct. 481, 485–86, 1 L.Ed.2d 393 (1957), the Supreme Court assumed "arguendo," that sentencing is part of the trial for purposes of Sixth Amendment speedy trial protection. Since that decision, this circuit and all others which have addressed the issue have either treated the subject as established law or have perpetuated the Court's assumption in *Pollard.*[2] *See United States v. Sherwood,* 435 F.2d 867, 868 (10th Cir.1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1381, 28 L.Ed.2d 649 (1971); *Whaley v. United States,* 394 F.2d 399 (10th Cir.1968); *see also United States v. Campisi,* 583 F.2d 692, 694 (3d Cir.1978); *United States v. Reese,* 568 F.2d 1246 (6th Cir.1977); *United States v. Campbell,* 531 F.2d 1333, 1335 (5th Cir.1976), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 121 (1977); *United States v. Tortorello,* 391 F.2d 587 (2d Cir. 1968). Moreover, no federal court has held that sentencing is *not* within the protective ambit of the Sixth Amendment right to a speedy trial.[3]

■ Because "the right to a speedy trial is a more vague concept than other procedural rights," *Barker v. Wingo,* 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972), courts are compelled to "approach speedy trial cases on an *ad hoc* basis," *id.* at 530, 92 S.Ct. at 2192. Wheth-

er a particular individual's rights have been violated "depends upon the circumstances." *Pollard v. United States,* 352 U.S. at 361, 77 S.Ct. at 486. This determination requires "a functional analysis of the right in the particular context of the case." *Barker v. Wingo,* 407 U.S. at 522, 92 S.Ct. at 2188.

■ Certain factors, however, should be taken into consideration. In *Pollard* the Supreme Court said "[t]he delay must not be purposeful or oppressive." *Pollard v. United States,* 352 U.S. at 361, 77 S.Ct. at 486. That standard was applied by this court in *Whaley v. United States,* 394 F.2d at 401, and referred to, in general, in *United States v. Sherwood,* 435 F.2d at 868. Subsequently, in *Barker* those implied inquiries into the reason for the delay and the existence of prejudice were amplified and articulated somewhat differently. The Court stated:

> We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, *we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.*

*Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192 (emphasis added).[4] Although the

---

**1.** The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...."

The right to a speedy trial is "fundamental" and is imposed by the Due Process Clause of the Fourteenth Amendment on the states. *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Indeed, the "right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North Carolina,* 386 U.S. at 223, 87 S.Ct. at 993.

**2.** In *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), a speedy trial case, the Supreme Court cited *Pollard* as supporting authority for one of the propositions discussed. We assume, however, that the extension of Sixth Amendment speedy trial safe-

guards past the transition from accused to convict will not be entirely free of doubt until the Court directly examines and resolves the question.

**3.** At least two state courts have so held. *See State v. Drake,* 259 N.W.2d 862 (Iowa 1977); *State v. Johnson,* 363 So.2d 458 (La.1978). However, other state courts have followed the Supreme Court's lead in assuming the Sixth Amendment applies to sentencing proceedings. *Gonzales v. State,* 582 P.2d 630 (Alaska 1978); *State v. Cunningham,* 405 A.2d 706 (Del.1979); *State v. Fennell,* 218 Kan. 170, 542 P.2d 686 (1975); *Erbe v. State,* 276 Md. 541, 350 A.2d 640 (1976); *State v. Sterling,* 23 Wash.App. 171, 596 P.2d 1082 (1979).

**4.** In the opening paragraph of its decision in *Barker* the Supreme Court referred to the five

Supreme Court has never addressed the question of whether the four-part standard of evaluation in *Barker* should be applied in a post-trial situation, numerous circuit and district courts have applied the factors set forth in *Barker* in evaluating delay in sentencing cases. *See United States v. Campisi,* 583 F.2d at 694; *United States v. Reese,* 568 F.2d at 1253; *United States v. Campbell,* 531 F.2d at 1335; *United States v. Deluca,* 529 F.Supp. 351, 354–55 (S.D.N.Y.1981); *White v. Henderson,* 467 F.Supp. 96, 98 (S.D.N.Y.1979); *United States v. Nunn,* 435 F.Supp. 294, 295 (N.D.Ind.1977). We generally agree with the position taken by those courts, and proceed to assess defendant's contention that delay in his sentencing denied him the right to a speedy trial.

■■■ We note at the outset that the factors set forth in *Barker* are guidelines, not rigid tests. As the Court stated, no single factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193. Rather, all four factors are to be balanced in light of the facts and circumstances of the case. *Id.; see also Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189–90, 38 L.Ed.2d 183 (1973). Obviously, a delay in sentencing involves considerations different from those related to pre-trial delay. The alteration of defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process. Once guilt has been established in the first instance the balance between the interests of the individual and those of society shift proportionately. In this case, after analyzing defendant's arguments within the framework of the factors set forth in *Barker,* and in the context of de-

fendant's case, we find that the delay in sentencing did not deny him the right to a speedy trial. The details of our analysis follow.

The first question is whether the fifteen month delay between defendant's plea of guilty and sentencing is sufficiently long to trigger the necessity for further inquiry. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192; *see also United States v. Jenkins,* 701 F.2d 850, 856 (10th Cir.1983); *Smith v. Mabry,* 564 F.2d 249, 251–52 (8th Cir.1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *Trigg v. Tennessee,* 507 F.2d 949, 953 (6th Cir.1974), *cert. denied,* 420 U.S. 938, 95 S.Ct. 1148, 43 L.Ed.2d 414 (1975). Other courts have rejected speedy trial claims in cases in which the period from the entry of a plea, or from conviction, to sentencing was considerably longer than it was here. *See, e.g., Pollard v. United States,* 352 U.S. at 354, 77 S.Ct. at 481 (24 months); *United States v. Tortorello,* 391 F.2d at 587 (29 months). Indeed, in those cases in which courts have viewed delays in sentencing as excessive, the delays have tended to far exceed eighteen months. *See, e.g., United States v. Campbell,* 531 F.2d at 1333 (six year delay; case remanded for consideration of defendant's allegations of prejudice); *Juarez-Casares v. United States,* 496 F.2d 190 (5th Cir.1974) (delay of 31 months; sentence vacated and defendant released); *United States v. James,* 459 F.2d 443 (5th Cir.), *cert. denied,* 409 U.S. 872, 93 S.Ct. 202, 34 L.Ed.2d 123 (1972) (three-year delay unreasonable, but no relief granted because no prejudice resulted); *Brady,* 443 F.2d 1307 (4th Cir.

previous cases (including *Pollard*) in which it dealt with the Sixth Amendment right to a speedy trial and the Court stated that "in none of these cases have we attempted to set out the criteria by which the speedy trial right is to be judged." 407 U.S. at 516, 92 S.Ct. at 2185 (quoting *Dickey v. Florida,* 398 U.S. 30, 40–41, 90 S.Ct. 1564, 1570, 26 L.Ed.2d 26 (1970) (Brennan, J., dissenting)). Because of that prefatory lan-

guage we regard the test in *Pollard* as having been swept into and made a part of the four factors enumerated by the Court in *Barker.* That is not to say, however, that for practical purposes *Pollard* has been overruled, or should be ignored. The Court in *Barker* cited *Pollard,* with approval, in its discussion with respect to reasons for delay.

1971) (eight year delay excessive, but did not warrant relief).

■ In analyzing the length of delay, it is "impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." *Barker,* 407 U.S. at 521, 92 S.Ct. at 2187. Nevertheless, we find the delay of some fifteen months from defendant's guilty plea until the time he was sentenced sufficiently long to provoke an inquiry into the other factors identified in *Barker.*

Accordingly, we next assess the reasons for delay. In so doing we draw guidance from *Pollard,* a delay in sentencing case. There, the Supreme Court declared that the delay must not be purposeful. 352 U.S. at 361, 77 S.Ct. at 486. For example, the delay must not be the result of a deliberate attempt by the government to hamper the defense, gain a tactical advantage, or to harass the defendant. *See Barker v. Wingo,* 407 U.S. at 531 n. 32, 92 S.Ct. at 2192 n. 32 (citing *Pollard,* 352 U.S. at 361, 77 S.Ct. at 485–86; *United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971)). The delay in this case does not approach that category. Instead, the delay sprang from two basic reasons which were entirely justifiable and proper. The first was an attempt by the court and the parties to benefit the defendant by deferring sentencing pending the outcome of an expected habitual criminal charge.[5] The second reason related to the government's accumulation of evidence necessary to bring that charge. In addition, more than two months' time was consumed by a continuance of the habitual offender trial prompted by defendant's motion to dismiss.

Defendant contends that the court need not have deferred sentencing in order to preserve its options to benefit the defendant at a later sentence enhancement proceeding. But he does not deny the good faith purpose of that initial delay as an attempt to act in his best interests. Furthermore, he fails to identify one iota of real advantage the government gained or could reasonably have been expected to gain by a delay in his sentencing.

■ Defendant also contends that the government did not require ten and one-half months[6] to prepare its habitual criminal case. He argues that he would have stipulated, in effect pleaded guilty, to the felony convictions underlying the habitual offender charge (although he later denied the validity of the underlying convictions, and demanded a trial). He also argues the government had enough evidence to proceed in the spring of 1981. Finally, he charges unnecessary delay, general incompetence, and neglect in the collection of evidence. We reject these arguments. The possibility that the government could have chosen different or more expeditious methods of proceeding, and thus saved several months time, raises no constitutional violation. The record establishes that a staff member in the district attorney's office was assigned to and worked on the collection of evidence. It also establishes that the attorney assigned to the case checked on the evidence collection process at least once a month. Some materials were not received until March and April 1982. We do not suggest the prosecutor's office was negligent. However, even if there were negligence in the preparation of the sentence enhancement case, resulting in the sentencing delay in question, it would not amount to a violation of defendant's speedy trial rights.

Next, we address the question of defendant's assertion of his speedy trial right.

---

**5.** It is not uncommon for a court to postpone sentencing. In *United States v. Pruitt,* 341 F.2d 700, 702 (4th Cir.1965), the court rejected a claim that it was error for the trial court to delay sentencing until after a trial on other pending charges against the defendant. *See also United States v. Tortorello,* 391 F.2d at 587 (where almost three years elapsed between a plea of guilty to one count and resolution of another pending charge).

**6.** This interval was between defendant's guilty plea on May 15, 1981, and the date on which the habitual criminal information was filed, April 2, 1982.

Defendant argues at length that the government was aware from the outset that defendant desired to be sentenced promptly so that he could be transferred to the state penitentiary at Santa Fe. It is clear, however, that at the time defendant pleaded guilty neither he nor his counsel objected to the court's reasoning that it would be in defendant's best interests to defer sentencing. The record also establishes that no formal motion was filed by defendant until nine months later; that some of the delay was occasioned by the hearing on that motion; and that defendant's counsel requested a continuance at one point. Thus we are satisfied that at least part of the fifteen month delay was at the instance or with the acquiescence of defendant and his counsel.[7] In any event, the question of defendant's assertion or waiver of his speedy trial right is not decisive in this case.

Finally, we turn to the question of prejudice. While a showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation, *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189–90, 38 L.Ed.2d 183 (1973), we have great reluctance to find a speedy trial deprivation where there is no prejudice, *United States v. Martinez*, 776 F.2d 1481 (10th Cir.1985); *United States v. Brown*, 600 F.2d 248, 254 (10th Cir.), *cert. denied*, 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979). This is especially true in a post-conviction situation. In fact, it might be said that once a defendant has been convicted it would be the rarest of circumstances in which the right to a speedy trial could be infringed without a showing of prejudice. Moreover, the necessity of showing substantial prejudice would dominate the four-part balancing test. This is so because of the traditional interests the speedy trial guarantee is designed to protect: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that

the defense will be impaired. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193; *United States v. Marion*, 404 U.S. at 320, 92 S.Ct. at 2187; *see also United States v. Askew*, 584 F.2d 960, 962 (10th Cir.1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979); *Smith v. Mabry*, 564 F.2d 249, 252–53 (8th Cir.1977). As the Court stated in *Barker*, the most serious of the interests protected by the speedy trial right is the ability of the defendant to prepare his defense. "If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193. Potential prejudice to an accused in a pretrial situation includes public scorn, deprivation of employment, disruption of family life, and the detrimental impact on the individual when jailed awaiting trial. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193; *Klopfer v. North Carolina*, 386 U.S. 213, 221–22, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

Most of those interests diminish or disappear altogether once there has been a conviction. Because the rights of society proportionately increase, the prejudice claimed by the defendant must be substantial and demonstrable.[8] We proceed to evaluate defendant's claims of prejudice, therefore, in the context of his status as a convicted felon, not as an accused person awaiting trial. All but one of defendant's numerous claims of prejudice are based on the comparative benefits of the New Mexico State Penitentiary at Santa Fe over the Bernalillo County jail: potential good-time credits if the defendant's conduct was good or if he engaged in various programs or performed exceptionally meritorious service; pay for prison labor; inmate release programs; rehabilitative and recreational programs; protection; possibly better medical treatment for an alleged hearing problem; and the opportunity to earn a less restrictive security level. He also argues that he suf-

---

7. Defendant was without counsel during a large part of the period in question, but was represented at the times indicated.

8. Of course, the defendant is still entitled to due process.

fered from anxiety by not knowing what sentence he would serve. No decision on point is cited by defendant in support of his propositions,[9] and we have found none. Furthermore, neither the state courts, nor the federal magistrate, nor the district court, found any evidence of prejudice to the defendant which rose to the level of a constitutional violation.

The benefits arguably available to defendant in the penitentiary are entirely speculative not only concerning whether he would have qualified, but also concerning the extent to which he would have participated or benefited. There is no record at all with respect to the alleged medical problem.[10] Speculative allegations of injury are unpersuasive. *See United States v. Huffman,* 595 F.2d 551, 558 (10th Cir.1979); *United States v. Askew,* 584 F.2d at 962–63; *Smith v. Mabry,* 564 F.2d at 252–53 (8th Cir.1977); *United States v. Graham,* 538 F.2d 261, 265 (9th Cir.), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 294 (1976). We decline to attach Sixth Amendment speedy trial dimensions to amenities and benefits a convicted felon might receive in one prison but not another.

Post-conviction, pre-sentence anxiety is briefly mentioned by the defendant, citing *State v. Cunningham,* 405 A.2d 706 (Del. 1979), and *Jack v. United States,* 341 F.2d 273 (10th Cir.1965). *Cunningham* was reversed, 414 A.2d 822 (Del.1980), and *Jack* is distinguishable on its face. There is nothing in the record to support the defendant's contention that he suffered anxiety with respect to the delay in his sentencing or, if so, to what extent. It would be just as reasonable to assume that he was re-

assured to some degree by the court's solicitude over the possible detrimental effect of immediate sentencing. Furthermore, the anxiety of an accused is not to be equated for constitutional purposes with anxiety suffered by one who is convicted, in jail, unquestionably going to serve a sentence, and only waiting to learn how long that sentence will be.

Having analyzed defendant's argument within the framework of the factors set forth in *Barker,* we conclude that the delay in sentencing did not deprive the defendant of his right to a speedy trial.

### B. *Habitual Offender Charge.*

■ The New Mexico Habitual Criminal Act, N.M.Stat.Ann. §§ 31–18–17 to 31–18–20 (1978 & Supp.1981), provides for longer, mandatory sentences to be imposed on repeat felony offenders. "The statute does not create a new offense but merely provides a proceeding for enhancing sentences." *State v. Nelson,* 96 N.M. 654, 634 P.2d 676, 677 (1981). And, the proceeding itself "is a sentencing procedure and not a trial of an offense." *Id.; see also State v. Knight,* 75 N.M. 197, 402 P.2d 380 (1965); *State v. Tipton,* 77 N.M. 1, 419 P.2d 216 (1966); *Linam v. Griffin,* 685 F.2d 369 (10th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). From that proposition, defendant argues that the habitual offender proceeding in this case was part of his burglary prosecution. Therefore, he argues the enhancement sentencing was also delayed for at least fifteen months. If so, this argument

**9.** Most of defendant's cited authorities deal with pre-trial delay and must be read in the context of prejudice suffered by an accused, not a convicted defendant. *See, e.g., Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *United States v. Vispi,* 545 F.2d 328 (2d Cir.1976); *United States v. Dreyer,* 533 F.2d 112 (3d Cir.1976); *United States v. Brown,* 520 F.2d 1106 (D.C.Cir.1975); *United States v. Roberts,* 515 F.2d 642 (2d Cir. 1975); *United States v. Rucker,* 464 F.2d 823 (D.C.Cir.1972); *McCarty v. Heard,* 381 F.Supp. 1290 (S.D.Tex.1974); *Tate v. Howard,* 110 R.I.

641, 296 A.2d 19 (1972). Those dealing with post-trial delay are not on point. In *Juarez-Casares,* 496 F.2d at 190, the defendant was prejudiced because at sentencing the judge relied on unrelated events which occurred between defendant's plea of guilty and sentencing, and then imposed maximum consecutive sentences.

**10.** There must be some showing of a causal relationship between delay and the prejudice claimed, *Brooks v. United States,* 423 F.2d 1149, 1152 (8th Cir.) *cert. denied,* 400 U.S. 872, 91 S.Ct. 109, 27 L.Ed.2d 111 (1970).

is resolved by our holding with respect to delayed sentencing on the burglary charge.

Defendant next argues that if the habitual offender proceeding was separate for Sixth Amendment purposes, then there was unconstitutional delay in bringing that charge to trial. He reasons that his speedy trial right attached at the hearing where he pleaded guilty to the burglary charges, because the prosecutor "publicly announced ... his intention to file...." Appellant's Brief at 17. Defendant points to his continued incarceration in the county jail instead of the penitentiary as " 'the actual restrains [sic] [of] arrest' on the forthcoming supplemental information," Appellant's Brief at 17 (citing *United States v. Marion*, 404 U.S. at 307; *United States v. Pino*, 708 F.2d 523, 527 n. 5 (10th Cir.1983); *United States v. McLemore*, 447 F.Supp. 1229, 1234–36 (E.D.Mich.1978)). None of those cases stands for the proposition that speedy trial rights attach when the government expresses an intention to file charges, or that continued imprisonment in the county jail instead of removal to the penitentiary amounts to an arrest on a charge not yet filed.

Sixth Amendment speedy trial rights do not apply to preindictment or preinformation delay. "Events which trigger Sixth Amendment protection are the formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge...." *United States v. Marion*, 404 U.S. at 320, 92 S.Ct. at 2187; *United States v. Pino*, 708 F.2d at 527 n. 5; *United States v. Jenkins*, 701 F.2d at 854 n. 4. It is not necessary for us to decide whether the habitual offender charge in this case was a separate proceeding for purposes of the Sixth Amendment speedy trial guarantee.[11] If it were a separate proceeding, defendant's rights did not attach until the supplemental information was actually filed on April 2, 1982, unless his continued imprisonment in the county jail, instead of the penitentiary, amounted to an arrest on the habitual offender charge. We hold that it did not. The restraints referred to in *Marion* are restraints on liberty, not restraints on a choice of prisons. Defendant had no liberty to be restrained. He was in jail because of his arrest and conviction on the burglary charges, not on the habitual criminal charge. There was no prospect that his liberty during the time periods in question depended upon the outcome of an habitual offender proceeding. It is evident that he would have remained incarcerated for the period of time in question whether or not that proceeding had been brought. Thus, the many cases cited to us by defendant, dealing with speedy trial rights in a pre-trial situation, are inapplicable. The habitual offender proceeding was not commenced until the supplemental information was filed on April 2, 1982, and defendant was tried on that charge on August 24 and 25, 1982. As to that interval of time, defendant raises no objection.

Accordingly, we hold that defendant was not deprived of his right to a speedy trial with respect to the habitual offender proceeding.

## DUE PROCESS CLAIM

Defendant's alternate theory is that the delay in bringing the habitual of-

---

**11.** The habitual offender proceeding in this case probably was a separate proceeding for Sixth Amendment purposes. In characterizing such a proceeding, the New Mexico Supreme Court stated "the charge is serious and the potential for prejudice against unrepresented defendants is so great that a right to counsel has been recognized.... [T]he proceeding possesses several characteristics of a trial (right to counsel, right to jury, rules of evidence, etc). The statute itself refers to the defendant's 'right to be *tried* as to the truth' of the allegations of the information." *State v. Nelson*, 634 P.2d at 677. In *Linam v. Griffin*, 685 F.2d at 389, this court analyzed the New Mexico Habitual Criminal Act from the standpoint of a double jeopardy claim. The court held that the habitual criminal proceeding was part of the underlying criminal offense for double jeopardy purposes. But the court's opinion suggests that a different result might be reached on the question of speedy trial guarantees. Central considerations in analyzing whether a separate proceeding is involved would be the necessity of preparing the case, the filing of a supplemental information, the requirement of proving the case, and inherent prosecutorial discretion in whether to file the charge at all, assuming the possibility of insufficient evidence to prove the case.

fender information was a violation of his Fifth Amendment due process rights. The Supreme Court has held that although a defendant's primary protection against the government's prosecution of overly stale claims is the statute of limitations, the Fifth Amendment's due process clause does have a "limited role to play in protecting against oppressive delay." *United States v. Lavasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *see also United States v. Jenkins*, 701 F.2d at 854 (10th Cir.1983). Our discussion in the previous section applies here. If the habitual offender proceeding was a separate charge, it did not begin until the supplemental information was actually filed on April 2, 1982. The interval prior to that would fall in the preindictment category. And, preindictment delay is not a violation of the Due Process Clause absent a showing of actual prejudice and that the delay was purposefully caused by the government to gain tactical advantage or to harass. *United States v. Vigil*, 743 F.2d 751, 758 (10th Cir.) *cert. denied,* — U.S. ——, 105 S.Ct. 600, 83 L.Ed.2d 709 (1984); *United States v. Jenkins*, 710 F.2d at 854; *United States v. Comosona*, 614 F.2d 695, 696 (10th Cir. 1980). A defendant bears the burden of proof that the delay caused substantial prejudice to his right to a fair trial and that the delay was for the purpose of gaining a tactical advantage over him. *United States v. Marion*, 404 U.S. at 324, 92 S.Ct. at 465; *United States v. Vigil*, 743 F.2d at 758. No such proof has been advanced by defendant in this case, and none is disclosed in the record. We find that there was no violation of defendant's rights to due process.

The district court's judgment dismissing defendant's petition for a writ of habeas corpus is hereby affirmed.