**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOAN MARIE YOUNG,

Defendant-Appellant.

No. 97-1345
(D.C. 94-CR-169-N)
(District of Colorado)

**ORDER AND JUDGMENT** *

Before **TACHA** , **HENRY** , and **MURPHY** , Circuit Judges.

Mrs. Young appeals her sentence after pleading guilty to one count of possession of methamphetamine with intent to distribute. She contends that the district court (1) violated her Sixth Amendment right to a speedy trial; (2) erred by proceeding immediately to sentencing without requiring a revised presentence report (PSR) or providing her with sufficient notice; and erred under the

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Sentencing Guidelines by (3) granting an upward adjustment for possession of firearms and (4) refusing to grant a downward adjustment for acceptance of responsibility.  We affirm.

## A.  BACKGROUND

On August 5, 1994, Mrs. Young pleaded guilty with her husband to one charge of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. 841(a)(1) and (b)(1)(B), and one charge of using and carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. §924(c).  The Youngs were placed in a half-way house pending sentencing, but before they could be sentenced, they absconded.  They were apprehended in June, 1995.  In July, both Youngs moved to withdraw their guilty pleas on both charges, and Mr. Young also moved for dismissal on double jeopardy grounds because his property involved in the alleged crime had been previously forfeited.  On September 22, 1995, the district court denied both motions to withdraw the guilty pleas but reserved ruling on Mr. Young's double jeopardy motion, citing the existing confusion in the law regarding civil forfeiture and double jeopardy.

In December, 1995, the Supreme Court decided      Bailey v. United States   , clarifying that "using and carrying" a firearm during a drug trafficking offense under 18 U.S.C. §924(c) requires the firearm's "active-employment."  516 U.S. 137, 148 (1995).  Mrs. Young filed a post-     Bailey  motion to dismiss her guilty plea as to her firearms charge.  The government filed a response on January 26,

2

1996, agreeing that it would be fair to allow her to withdraw that plea, but the district court did not rule on the motion.

In June, 1996, the Supreme Court decided United States v. Ursery, 518 U.S. 267 (1996), holding that civil in rem forfeitures were not punishment for purposes of the double jeopardy clause. Ursery provided clear precedent for the resolution of Mr. Young's outstanding motion to dismiss on double jeopardy grounds but, nevertheless, in July, Mrs. Young petitioned to join her husband's motion. Still, the district court did not rule on any of the Youngs' outstanding motions, nor did it reschedule their cases for sentencing.

In December, 1996, Mrs. Young moved to set hearings on the outstanding motions and sentencing. Three months later, she moved to dismiss on the grounds that her Sixth Amendment speedy trial rights had been violated. In July, 1997, she finally petitioned this court for a writ of mandamus. We granted the writ on August 19, 1997, ordering the district court to rule on pending motions within thirty days and to sentence defendants, "if then appropriate."

In response, on September 4, 1997, the district court granted Mrs. Young's post- Bailey motion to withdraw her plea as to the firearms charge, dismissed the double jeopardy motion, and set her pending motion to dismiss for violation of her speedy trial rights for hearing on September 11, 1997. It also issued an order returning the firearms seized by the government during the search of the Youngs' home to Mr. Young. At the September 11 hearing, the district court denied Mrs.

3

Young's motion to dismiss, then proceeded immediately to sentencing. The court sentenced Mrs. Young to 137 months of confinement, plus five years of supervised release. We now turn to Mrs. Young's four alleged errors.

## B. DISCUSSION

### 1. Sixth Amendment Right To A Speedy Trial

Mrs. Young first argues that the 24 month delay between the trial court's determination of her initial motion to withdraw her plea on September 22, 1995, and her final sentencing on September 11, 1997, violated her Sixth Amendment right to a speedy trial. We review de novo the district court's legal conclusions as to whether Mrs. Young established a violation of her constitutional right to a speedy trial. United States v. Dirden, 38 F.3d 1131, 1135 (10th Cir. 1994).

Because the right to a speedy trial is "a more vague concept than other procedural rights," we approach speedy trial claims "on an ad hoc basis." Barker v. Wingo, 407 U.S. 514, 521, 530 (1972). There are certain factors, however, that we consider: "[a] The length of delay, [b] the reason for the delay, [c] the defendant's assertion of her right, and [d] prejudice to the defendant." Perez v. Sullivan, 793 F.2d 249, 253 (10th Cir. 1986) (quoting Barker, 407 U.S. at 530). These factors are non-rigid guidelines, and "[n]o single factor is 'either a necessary or sufficient condition to the finding of a deprivation of the right of a

speedy trial.'" Barker, 407 U.S. at 533. Here, in the post-conviction context, we consider the same factors but have previously noted that in such cases, the "necessity of showing substantial prejudice would dominate the four-part balancing test." Perez, 793 F.2d at 256.

*a. Length of Delay*

If the length of the delay is "presumptively prejudicial," the other three Barker factors are triggered. Perez, 793 F.2d at 254 (citing Barker, 407 U.S. at 530). While the parties dispute the exact length of delay, the government concedes that it is "presumptively prejudicial" and triggers the Barker analysis.

*b. Reason for the Delay*

The parties agree that the unjustifiable delay at issue here resulted from the unexplained error of the district court, not a deliberate government attempt to delay the case. A neutral reason, such as "negligence or overcrowded courts," should be given less weight than a deliberate government interference but nevertheless should still be weighed against the government "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Barker, 407 U.S. at 531; see also Burkett v. Fulcomer, 951 F.2d 1431, 1440 (3d Cir. 1991) (holding that "administrative" failure to schedule hearing on motions for which administrator had "no explanation" weighed against government).

5

*c. Defendant's Assertion of Her Right*

Mrs. Young filed several motions requesting court action, and this court ultimately granted her a writ of mandamus. Mrs. Young has asserted her speedy trial right.

*d. Prejudice*

Although a showing of prejudice is not necessary to find a speedy trial violation, we have expressed "great reluctance" to find a deprivation without such a showing. Perez, 793 F.2d at 256. In the post-conviction situation, the import of showing prejudice "dominate[s]" the Barker test because the traditional interests protected by the speedy trial guarantee are diminished once there has been a conviction. Id. ("[I]t might be said that once a defendant has been convicted it would be the rarest of circumstances in which the right to a speedy trial could be infringed without a showing of prejudice."). The prejudice claimed by the defendant must be "substantial and demonstrable." Id.

Here, Mrs. Young argues that she was prejudiced by pre-sentence anxiety, resulting from uncertainty regarding her sentence and evidenced by her need for an increased anti-depressant prescription. While the delay certainly could have contributed to anxiety, the district court had already denied her motion to withdraw her guilty plea on the drug charge, which carried a five-year mandatory minimum sentence. Thus, even after 24 months of incarceration, she had the

6

certainty of having more than half of that minimum sentence still left to serve. See 21 U.S.C. § 841 (a)(1), (b)(1)(B). The anxiety of one convicted and "unquestionably going to serve a sentence" is not equivalent for "constitutional purposes" to the anxiety of one accused and awaiting trial. Perez, 793 F.2d at 257.

Mrs. Young also argues that she was prejudiced by diminished rehabilitative opportunities, because she was held for two years in the Denver County jail instead of a federal facility. We have, however, "decline[d] to attach Sixth Amendment speedy trial dimensions to amenities and benefits a convicted felon might receive in one prison but not another." Id. (comparing a county jail to a federal penitentiary). Thus, Mrs. Young has not shown the "substantial and demonstrable" prejudice required to establish a Sixth Amendment violation in the more stringent post-conviction setting.

In sum, although the first three Barker factors weigh in Mrs. Young's favor, because she has not made a sufficient showing of prejudice, we conclude that the delay in sentencing did not deprive her of a speedy trial.

**2. Proceeding Immediately To Sentencing**

Mrs. Young next argues that the district court erred by proceeding immediately to sentencing. After we granted Mrs. Young's writ of mandamus, the district court set a hearing date, and issued an order stating, "[t]he hearing

7

will continue from day to day until the pending motions are heard and determined and, if applicable, the defendants are sentenced." Minute Order, No. 94-CR 169-N. (Sept. 4, 1997). At the hearing, the district judge first denied Mrs. Young's motion to dismiss for speedy trial violation. Mrs. Young argues that the court then erred by proceeding immediately to sentencing (a) without requiring a revised presentence report (PSR) and (b) without sufficient notice to her under Fed. R. Crim. Pro. 32.

*a. Revised PSR*

First, Mrs. Young argues that the district court should have required a revised PSR before proceeding to sentencing because of an earlier district court order that returned seized firearms to Mr. Young under Rule 41(e). Rule 41(e) provides for the return of seized property if the claimant is entitled to its "lawful possession." Fed. R. Crim Pro. 41(e). Mrs. Young argues that, by returning the guns to her husband, the order established that he owned the guns, not her, thus changing the facts of the case so as to necessitate a revised PSR. See Order and Memorandum of Decision, No. 94 CR 169-N (Sept. 4, 1997).

Although Mrs. Young originally received her PSR in 1994, we apply the version of Rule 32 in effect at the time of Mrs. Young's sentencing in 1997. See United States v. Cureton, 89 F.3d 469, 472 (7th Cir. 1996) (holding that version of procedural rules in effect at time of sentencing governed). Under this version,

8

the court may, at the hearing, accept the PSR as its findings of fact "[e]xcept for any unresolved objection under subdivision (b)(6)(B)." Fed. R. Crim. Pro. 32(b)(6)(D). Under subdivision (b)(6)(B), the court must consider "any objections to any material information, sentencing classifications, sentencing guideline ranges, and material classifications contained in or omitted from the [PSR]." Id. at (b)(6)(B).

Mrs. Young's objection regarding ownership of the weapons does not, however, address any material information or sentencing classifications in the PSR. The PSR notes only the type and location of the guns found in the Youngs' house during the search, which Mrs. Young does not dispute, and makes sentencing recommendations on that basis. Accordingly, the district judge was entitled to accept the PSR as its findings of fact.

*b. Sufficient Notice Under Rule 32*

Mrs. Young also argues that she was not given sufficient notice prior to her sentencing to comply with Rule 32. We review de novo the interpretation of federal rules of criminal procedure. United States v. Roman-Zarate, 115 F.3d 778, 781 (10th Cir. 1997). In her brief, Mrs. Young cites to the 1994 version of Rule 32, in effect at the date on which her sentencing hearing was originally scheduled. She argues that under this notice requirement, the district court should have allowed her additional time between its ruling on her motions and

9

sentencing.

Again, however, we must apply the version of Rule 32 in effect when Mrs. Young's sentencing hearing actually occurred in 1997. See Cureton, 89 F.3d at 472. The 1997 version states that, "[n]ot less than 35 days before the sentencing hearing," the probation officer "must furnish the presentence report to the defendant [and] the defendant's counsel. . . ." Fed. R. Crim. Proc. 32(b)(6)(A). These requirements are met here because on September 14, 1994, Mrs. Young was sent a PSR listing the potential areas to be considered for upward departure and, on January 29, 1996, she was notified of the government's intention to seek an upward adjustment for firearms possession if she was allowed to withdraw her plea as to the firearms charge. These recommendations were consistent with the stand the government ultimately took at sentencing. The fact that the intervening period between Mrs. Young's receipt of the PSR and her sentencing was two years does not change our analysis, because nothing suggested any change in the government's position. Further, she does not present a credible argument that she was prejudiced by this sentencing. Thus, Mrs. Young's notice argument fails.

**3. Upward Adjustment for Possession of Firearms**

Mrs. Young next argues that the district court erred in giving her an upward adjustment for possession of firearms under § 2D1.1(b)(1) of the Sentencing Guidelines. We review the district court's factual determinations at sentencing

10

for clear error.  United States v. Roberts , 980 F.2d 645, 647 (10th Cir. 1992).  In order to sustain an upward adjustment for firearms possession, the government has the initial burden of proving "that a dangerous weapon was possessed during the commission of the offense."   Id.  The government can meet this burden even by presenting "no evidence other than proximity to suggest the gun was connected to the offense."   Id.  Once the government has met its burden, the defendant can rebut by presenting evidence showing that it is "clearly improbable" that the gun was connected to the offense.   Id.; see also U.S.S.G. § 2D1.1 cmt. n. 3.

Here, the government showed that during the search, Mrs. Young was in the midst of a drug transaction and that three guns were found in the same room. Nine other weapons were found throughout the house, including four other loaded revolvers and pistols, and a loaded AK-47 in a closet.  This proximity is sufficient to demonstrate possession and to shift the burden of rebuttal to      Mrs. Young.

She rebuts that the connection between the offense and the weapon was clearly improbable in light of the district court's earlier Rule 41(e) order returning seized firearms to Mr. Young, because it      established that he owned the weapons, not her, and that the guns were not used in furtherance of any crime. See Order and Memorandum of Decision (D. Colo. Sept. 4, 1997).  She presented no additional evidence at the hearing.

Without more, Mrs. Young has not met her burden.  First, she argues that

the court's return of the guns to Mr. Young established that he owned the weapons, but, as the sentencing enhancement turns on possession, not ownership, her argument is inapposite.

Second, the court's decision that Mr. Young was entitled to lawful possession under 41(e) establishes at most that the guns were not "used" in furtherance of a crime. As the sentencing enhancement turns only on possession, not use, again, the 41(e) ruling does not foreclose imposition of the enhancement. Cf. United States v. Goddard, 929 F.2d at 546, 548 (10th Cir.1991)) (The standard for conviction under 18 U.S.C. § 924(c) for "use" of a weapon "is much higher than that necessary for enhancement under the Guidelines.").

Finally, in evaluating whether Mrs. Young has shown the connection between the guns and the offense to be highly improbable, we consider the "temporal and spatial relation [that exists] between the weapon, the drug trafficking activity, and the defendant." United States v. Flores, 149 F.3d 122, 1280 (10th Cir. 1998). Three guns were found in the same room where the drug transaction took place. Thus, the district court did not clearly err in refusing to find the connection between the guns and the offense clearly improbable, nor in granting the upward adjustment under § 2D1.1.

**4. Downward Adjustment for Acceptance of Responsibility**

Finally, Mrs. Young argues that the district court erred in refusing to grant

12

her a downward adjustment for acceptance of responsibility under U.S.S.G. §3E1.1. Acceptance of responsibility is a factual determination reviewed for clear error. United States v. Hawley, 93 F.3d 682, 688 (10th Cir. 1996). The sentencing judge is given "great deference on review" because of his "unique position to evaluate a defendant's acceptance of responsibility." Id. at 689 (quoting U.S.S.G. § 3E1.1, cmt. n. 5).

A defendant's offense level may be reduced by two levels if she "clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1. But, "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, cmt. n. 4. Escaping from custody before sentencing demonstrates obstruction of justice. United States v. Amos, 984 F.2d 1067, 1072-73 (10th Cir. 1993). Here, the district court noted that Mrs. Young escaped from the half-way house where she had been placed pending sentencing.

Further, while entry of a plea of guilty prior to commencement of trial can evidence acceptance of responsibility, it may be "outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." Hawley, 93 F.3d at 689 (quoting U.S.S.G. 3E1.1, cmt. n. 3). Here, the district court found that Mrs. Young's attempt to withdraw her guilty plea also demonstrated her lack

13

of acceptance of responsibility. For these reasons, the district court did not clearly err in denying the § 3E1.1 adjustment.

But Mrs. Young argues that her situation is an "extraordinary case" exception to § 3E1.1, because her actions inconsistent with acceptance of responsibility were motivated by opposition only to the firearms charge, not the methamphetamine charge. See U.S.S.G. § 3E1.1 cmt. n. 4 (there may be "extraordinary cases" in which adjustments under both obstruction of justice and acceptance of responsibility apply). Her argument, however, is not persuasive when her return for sentencing was not voluntary, and when she subsequently moved to withdraw her plea on both charges. Regardless of her subjective intentions, her actions did not "clearly demonstrate" that she had accepted responsibility on either charge, much less that hers was an "extraordinary case" deserving the reduction. Thus, the district court did not clearly err in refusing to grant Mrs. Young the § 3E1.1 reduction. See Hawley, 93 F.3d at 689 (rejecting "extraordinary case" claim holding that "[c]onduct amounting to escape . . . is certainly evidence of failure to accept responsibility, and this fact alone provides adequate foundation for the district court's decision").

Accordingly, we AFFIRM the judgment of the district court.

14

The mandate shall issue forthwith.

ENTERED FOR THE COURT,


Robert H. Henry
Circuit Judge