2003-NMCA-024

62 P.3d 354

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Lawrence MASSENGILL,**
**Defendant–Appellant.**

No. 22,358.

Court of Appeals of New Mexico.

Dec. 4, 2002.

Certiorari Denied, No. 27,847,
Jan. 15, 2003.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Theresa M. Duncan, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BOSSON, Chief Judge.

{1} Defendant was convicted of criminal sexual penetration and abuse of a child by endangerment. We reverse Defendant's conviction for abuse of a child and remand for re-sentencing. We affirm his conviction for criminal sexual penetration, and affirm the trial court in all other respects. Among other issues, we discuss the circumstances under which out-of-court statements made to parents and medical personnel by a child, too young to remember anything at trial, may be used against the accused at trial in a manner consistent with the Confrontation Clause of the United States Constitution.

## BACKGROUND

{2} On May 23, 1998, Defendant agreed to babysit his former girlfriend's two-and-a-half-year-old daughter (Child). Child bumped her head when she fell from her stroller while Defendant was taking her for a walk. Later in the day, Child's mother (Mother) discovered a one-centimeter bruise on Child's labia. When asked how the bruise occurred, Child told Mother that Defendant had pinched her. Subsequently, Child made similar statements to her father (Father) and also to a nurse and doctor who examined her. Defendant denied any knowledge of how Child's labia became bruised.

{3} Following a jury trial, Defendant was convicted of criminal sexual penetration and child abuse by endangerment.

## DISCUSSION

### Child's Out–of–Court Statements to Parents and to Medical Personnel

{4} By the time of trial, Child, then five years old, remembered nothing about Defendant or the events of May 23, 1998, and was determined to be unavailable to testify. Over Defendant's objections, the trial court admitted Child's out-of-court statements to her parents and to medical personnel, in which she identified Defendant as the one who pinched her labia.

{5} Defendant contends that these out-of-court statements do not fall within any recognized hearsay exception and that their admission violated his constitutional right to confront witnesses against him. *See* U.S. Const. amends. V, VI, XIV; N.M. Const. art. II, §§ 14, 18; Rules 11–801 to –803 NMRA 2002 (prohibiting the use of out-of-court statements, offered to prove the truth of the matter asserted, unless such a statement falls into a recognized exception); *State v. Ross*, 1996–NMSC–031, 122 N.M. 15, 22, 919 P.2d 1080, 1087 ("The right of confrontation is thus one of the elements of 'due process of law' that the Fourteenth Amendment secures for criminal defendants in state court proceedings."). We review the trial court's admission of Child's hearsay statements under the Rules of Evidence for an abuse of discretion. *State v. Lopez*, 2000–NMSC–003, ¶ 10, 128 N.M. 410, 993 P.2d 727. We apply a de novo standard of review as to the constitutional issues related to Defendant's rights under the Confrontation Clause.

### Child's Out–of–Court Statements to Parents—Present Sense Impression Exception to Hearsay Rule

{6} The trial court ruled that Child's statements to Mother and Father were admissible either as statements of present sense impression or under the catch-all exception to the hearsay rule. *See* Rule 11–803(A), (X); Rule 11–804(B)(5) NMRA 2002. We first address whether these statements were properly admitted as statements of present sense impression. *See* Rule 11–803(A) ("A statement describing or explaining an event or condition made *while the declarant was perceiving the event or condition, or immediately thereafter.*" (Emphasis added.)); *State v. Salgado*, 1999–NMSC–008, ¶ 5, 126 N.M. 691, 974 P.2d 661 (stating that admission of hearsay is reviewed for an abuse of discretion).

{7} On May 23, 1998, a few hours after leaving Child in Defendant's care, Mother

called to check on Child and could hear Child crying in the background. Defendant explained that he had been walking Child in the stroller and that Child had bumped her forehead when the stroller had fallen off the sidewalk and tipped over. Mother also spoke with Child, who confirmed that she had bumped her head falling from the stroller. Approximately three and a half hours later, Mother returned home and found that Child had a golf ball sized bump on her head. Mother spoke with Defendant for approximately twenty to thirty minutes.

{8} After Defendant left, while putting a diaper on Child, Mother noticed a one-centimeter bruise on Child's labia. Mother asked Child how she got the bruise on her "cha-cha," which was the term Child used to refer to her genitalia. According to Mother, Child responded, "[Defendant] pinched my cha-cha," while making a pinching motion with her thumb and forefingers. About an hour or so later, Father came to the house to pick up Child for a weekend visit. Mother removed Child's diaper and showed Father the bruise on Child's labia. When Father asked Child what had happened, Child said that Defendant had pinched her, and again made a pinching motion with her fingers.

■ {9} For a statement to be admissible under the present sense impression exception, "there must be a close proximity in time between the event and the statement." *Salgado*, 1999–NMSC–008, ¶ 13, 126 N.M. 691, 974 P.2d 661 (asserting that reliability is enhanced by limiting the exception in time); *see also State v. Perry*, 95 N.M. 179, 180, 619 P.2d 855, 856 (Ct.App.1980) (discussing the importance of contemporaneity in determining whether a statement is admissible under the present sense impression exception). The accident with the stroller occurred approximately four hours before Child told Mother that Defendant had pinched her. Even more time had elapsed before Child's statement to Father.

{10} Although it is uncertain exactly when Child's labia was actually bruised, the record does not support a finding that Child's statements were made "while [Child] was perceiving the event or condition, or immediately thereafter." Rule 11–803(A). Accordingly, we conclude that the statements made by Child to her parents, after a significant time lapse, were not sufficiently contemporaneous to warrant admission under the present sense impression exception to the hearsay rule. *See, e.g., State v. Maestas*, 92 N.M. 135, 139–41, 584 P.2d 182, 186–88 (Ct.App. 1978) (holding statements inadmissible when made at least three hours after the declarant had been beaten). In the alternative, we must determine whether these statements were properly admitted pursuant to the catch-all exception to the hearsay rule.

**Child's Out–of–Court Statements to Parents—the Catch–All Exception to Hearsay Rule**

■ {11} The trial court ruled that Child's statements to her parents were also admissible under the catch-all exception to the hearsay rule. *See State v. Williams*, 117 N.M. 551, 560, 874 P.2d 12, 21 (1994) (stating, in regard to the catch-all exception, "[t]he trial court's ruling concerning the trustworthiness of an out-of-court statement will be upheld unless there has been an abuse of discretion"). Rules 11 803(X) and 11–804(B)(5) contain identical language, both describing the catch-all exception to the hearsay rule. For the purposes of our discussion, we will refer to Rule 11–804(B)(5), which provides in relevant part:

> **Other exceptions.** A statement not specifically covered by any of the foregoing exceptions *but having equivalent circumstantial guarantees of trustworthiness,* if the court determines that:
>
> (a) the statement is offered as evidence of a material fact;
>
> (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
>
> (c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

(Emphasis added.); *see also Tartaglia v. Hodges*, 2000–NMCA–080, ¶ 9, 129 N.M. 497, 10 P.3d 176 (recognizing that, although inconsequential, when the declarant is unavailable,

the appropriate catch-all rule is Rule 11–804(B)(5), rather than Rule 11–803(X)).

{12} Child was too young at trial to recall her statements to her parents, and Defendant does not challenge that Child was unavailable as a witness within the meaning of Rule 11 804(A)(3). Defendant does not question that Child's statements to her parents were offered as evidence of a material fact. Nor does he question their probative value or otherwise argue that Child's statements to her parents did not satisfy the requirements of Rule 11–804(B)(5). Instead, assuming that the statements were admissible under Rule 11–804(B)(5), Defendant argues that the admission of these statements nonetheless violated his constitutional rights under the Confrontation Clause. We have no reason to believe that the trial court abused its discretion by admitting this evidence under Rule 11–804(B)(5). Accordingly, we proceed to address Defendant's constitutional arguments under the Confrontation Clause.

### Child's Out–of–Court Statements to Parents—Confrontation Clause Analysis

{13} When a declarant is unavailable, the Confrontation Clause of the Constitution requires that an out-of-court statement must bear sufficient " 'indicia of reliability' " to be admissible. *State v. Woodward*, 1996–NMSC–012, ¶ 38, 121 N.M. 1, 908 P.2d 231 (1995) (quoting *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). Sufficient reliability can be inferred constitutionally, either when the evidence falls "within a firmly rooted ... exception" to the hearsay rule, *or* when there is a showing of "particularized guarantees of trustworthiness." *Salgado*, 1999–NMSC–008, ¶ 12, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted); *accord Roberts*, 448 U.S. at 66, 100 S.Ct. 2531; *see also Idaho v. Wright*, 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) ("Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded *longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements.*" (Emphasis added.)). In

constitutional terms, an exception is firmly rooted "if it has been established historically and courts have widely accepted it." *Salgado*, 1999–NMSC–008, ¶ 12, 126 N.M. 691, 974 P.2d 661.

{14} Statements offered under the catch-all exception are *not* firmly rooted and are "presumptively unreliable and inadmissible." *Lopez*, 2000–NMSC–003, ¶ 16, 128 N.M. 410, 993 P.2d 727 (internal quotation marks and citation omitted). Therefore, the proponent must demonstrate "sufficient guarantees of trustworthiness" in regard to the particular statement and the circumstances surrounding it in order to overcome the presumption that the statement is inadmissible under the Confrontation Clause. *Id.* (internal quotation marks and citation omitted); *see also State v. Macias*, 110 N.M. 246, 251, 794 P.2d 389, 394 (Ct.App.1990) ("Even ... statements that satisfy recognized exceptions to the hearsay rule may still violate the Confrontation Clause. Nevertheless, if a declarant is unavailable and the hearsay statement is clothed with sufficient indicia of reliability, the Confrontation Clause is satisfied." (Citations omitted.)). Because Defendant argues that the admission of Child's out-of-court statements to her parents violated his constitutional right to confrontation, we apply a de novo standard of review. *See Lopez*, 2000–NMSC–003, ¶ 10, 128 N.M. 410, 993 P.2d 727.

{15} In analyzing "sufficient guarantees of trustworthiness" under the Confrontation Clause, we consider the following " 'four factors leading to unreliability: (1) ambiguity; (2) lack of candor; (3) faulty memory; and (4) misperception.' " *Id.* ¶ 17 (quoting *Ross*, 122 N.M. at 24, 919 P.2d at 1089). The trial court found that Child's statements to her parents were trustworthy because her parents asked non-leading questions and because Child "responded with no equivocation, responded immediately and was pretty specific." The statement "Defendant pinched my cha-cha," particularly when accompanied by the pinching gesture Child made with her fingers, unambiguously described Child's understanding of how her labia became bruised. *See State v. Taylor,*

103 N.M. 189, 197, 704 P.2d 443, 451 (Ct.App. 1985) (describing three-year-old's out-of-court statement as clear and unambiguous when the child stated that an unidentified man had "stuck" fingers up the child's "butt," which the child demonstrated by pointing with his own fingers).

{16} In examining the risk of a lack of candor, we note that Child told Mother and Father the same thing, consistently identifying Defendant as the one who had pinched her. *Cf. id.* at 198, 704 P.2d at 452 (finding insufficient trustworthiness where the child identified five separate perpetrators). The record gives no indication of any reason why Child might have been motivated to lie about what had happened to her. Furthermore, it is doubtful that a child so young would have knowledge of sexual matters or the desire to lie about sexual abuse. *See Morgan v. Foretich,* 846 F.2d 941, 948 (4th Cir.1988). Significantly, we find no evidence that anyone coached Child to assist her in identifying Defendant as the one who gave her the bruise. *Cf. State v. Ruiz,* 2001–NMCA–097, ¶ 4, 131 N.M. 241, 34 P.3d 630 (noting that the child's mother had on several occasions "assisted" her daughter in recalling memories of sexual abuse, which raised the possibility of undue influence on the child's testimony).

{17} In regard to the risk of faulty memory, we note that Child's statements to her parents were made on the same day the bruise was discovered, when the events of the day would have been fresh in Child's memory. Finally, regarding the danger of misperception, we consider the consistency of Child's statements to her parents, the lack of coaching, and the straightforwardness of her responses to her parents' non-leading questions. The record does not reveal any material risk that Child may have misperceived events.

{18} Based on the foregoing, we conclude that Child's statements to Mother and Father were sufficiently trustworthy in light of the particular circumstances of this case. Therefore, the admission of these statements into evidence did not violate Defendant's constitutional rights under the Confrontation Clause. *See generally Williams,* 117 N.M. at 560–61, 874 P.2d at 21–22 (admitting murder victim's out-of-court statements under the catch-all exception as sufficiently reliable to satisfy Confrontation Clause concerns).

**Child's Out–of–Court Statements to Medical Personnel—the Medical Diagnosis or Treatment Exception to Hearsay Rule**

{19} After Child's parents discovered the bruise on Child's labia, Child was examined by a nurse and doctor who specialized in sexual assault cases. During separate examinations, Child made statements to both Nurse Esquibel and Dr. Ornelas, in which she identified Defendant as the one who pinched her labia. Over Defendant's objections, the trial court admitted these out-of-court statements of identity pursuant to the medical diagnosis or treatment exception to the hearsay rule. Rule 11–803(D), which is identical to Fed.R.Evid. 803(4), provides for the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." We review Defendant's evidentiary claim of error for an abuse of discretion. *See Lopez,* 2000–NMSC–003, ¶ 10, 128 N.M. 410, 993 P.2d 727.

{20} Defendant opposes the admission of Child's statements identifying him as the perpetrator. He argues that the statements do not satisfy the criteria under evidentiary Rule 11–803(D) because the statements were taken for law enforcement purposes and were not "reasonably pertinent to diagnosis or treatment." Rule 11–803(D). We are not persuaded. In *State v. Altgilbers,* 109 N.M. 453, 457–60, 786 P.2d 680, 684–87 (Ct.App. 1989), we determined that out-of-court statements identifying perpetrators could be admitted under the medical diagnosis or treatment exception. We noted that "[i]n dealing with child sexual abuse, ... disclosure of the perpetrator may be essential to diagnosis and treatment." *Id.* at 459, 786 P.2d at 686.

{21} Nurse Esquibel testified that the reasons for identifying an alleged perpetrator are "to provide a safe environment for the

child ... to make sure that the child is not going ... back into an environment where the child could be harmed again, and ... [to] make appropriate notification to the legal department and also Child Protective Services." *See In re Esperanza M.,* 1998–NMCA–039, ¶ 10, 124 N.M. 735, 955 P.2d 204 ("We consider it immaterial whether the examination was part of an investigation, so long as it was for diagnosis or treatment."). Dr. Ornelas testified that, as part of the diagnosis process, it is necessary to obtain a history and physical. Dr. Ornelas also testified that it is important to obtain the identity of an alleged perpetrator in order to ensure the safety of a child. The two medical providers afforded a plausible rationale for their need to obtain this identifying information from Child, such that we think their inquiries were reasonably pertinent to diagnosis or treatment. We conclude that the trial court did not abuse its discretion under the Rules of Evidence by admitting the statements Child made to Nurse Esquibel and Dr. Ornelas, pursuant to Rule 11–803(D).

### Child's Out–of–Court Statements to Medical Personnel—Confrontation Clause Analysis

{22} Defendant also argues that the admission of Child's out-of-court statements to Nurse Esquibel and Dr. Ornelas, even if permitted under the Rules of Evidence, violated his rights under the Confrontation Clause. He argues that Child's statements did not bear sufficient " 'indicia of reliability' " to be admissible under the Confrontation Clause. *Woodward,* 1996–NMSC–012, ¶ 38, 121 N.M. 1, 908 P.2d 231 (quoting *Roberts,* 448 U.S. at 65–66, 100 S.Ct. 2531). As we previously indicated in our Confrontation Clause discussion with regard to the catch-all exception, a statement will be considered sufficiently reliable if it falls within a firmly rooted exception *or* when there is a showing of "particularized guarantees of trustworthiness." *Salgado,* 1999–NMSC–008, ¶ 12, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citations omitted). We review Defendant's constitutional argument de novo. *See Lopez,* 2000–NMSC–003, ¶ 10, 128 N.M. 410, 993 P.2d 727.

### Confrontation Clause Analysis—Firmly-Rooted Exception

{23} Defendant argues that the medical diagnosis or treatment exception is not firmly rooted in the law for Confrontation Clause purposes, unless it is supported by two traditional common law criteria: declarant's treatment-seeking motive and physician reliance. The dual common law rationale has been described as follows: " [I]f the *declarant's motive* in making the statement is consistent with the purpose of promoting treatment, *and* the content of the statement is *reasonably relied on by a physician* in formulating a diagnosis or mode of treatment, then the statement presumptively is admissible.' " *Altgilbers,* 109 N.M. at 458, 786 P.2d at 685 (quoting *Morgan,* 846 F.2d at 951 (Powell, J., concurring in part, dissenting in part)) (emphasis added). In general terms, the hearsay exception for statements made for medical diagnosis or treatment has long been recognized at common law and has been adopted in some form by the great majority of American jurisdictions. *See generally* Robert P. Mosteller, *Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment,* 67 N.C.L.Rev. 257 (1989) (hereafter "Mosteller I"). However, absent the support of both common law justifications that have traditionally supported this exception-declarant's treatment-seeking motive and physician reliance—its firmly-rooted status is unclear.

{24} Defendant points out there was no evidence that Child's statements were motivated by a desire to seek medical treatment. Given Child's youth, the State does not appear to disagree. Defendant contends that absent evidence of a declarant's treatment-seeking motive, as well as physician reliance on the statement in question, the exception cannot be considered firmly rooted in the common law, and therefore, such a statement is inadmissible, unless additionally supported by a showing of "particularized guarantees of trustworthiness." *Salgado,* 1999–NMSC–008, ¶ 12, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). Accordingly, we must determine whether the medical diagnosis or treatment exception requires an inquiry into the patient's treat-

ment-seeking motive, as well as the physician's reliance, in order to be considered a firmly-rooted hearsay exception for Confrontation Clause purposes.

{25} Our precedent offers us only limited guidance in this matter. In *Altgilbers,* two children made out-of-court statements to a pediatrician and a psychologist, in which they identified the defendant as having sexually abused them. 109 N.M. at 455, 786 P.2d at 682. We determined that these statements were properly admissible under the medical diagnosis or treatment exception to the hearsay rule, even though there was no evidence related to the motive of the declarants. *Id.* at 460, 786 P.2d at 687. In analyzing the statements under Rule 11–803(D), we stated that "unlike the common law rule, [Rule 11–803(D)] does not require inquiry into the patient's motive in making the statement," so long as the statements were relied upon by the physician. *Altgilbers,* 109 N.M. at 460, 786 P.2d at 687. Therefore, putting aside for the moment constitutional concerns that arise in criminal cases, *Altgilbers* holds that our Rules of Evidence do not require a treatment-seeking motive for a statement to be admissible under the medical diagnosis or treatment exception. *Id.*

{26} However, unlike the case before us, the children in *Altgilbers* were actually available for cross-examination, and therefore, we did not have to decide the Confrontation Clause issues that face us now. *Id.* Nonetheless, we did observe in *Altgilbers* that in criminal cases the Confrontation Clause may require the exclusion of some hearsay statements that would otherwise be admissible under Rule 11–803(D) of the Rules of Evidence. *Altgilbers,* 109 N.M. at 459, 786 P.2d at 686 (asserting that a strict application of Fed.R.Evid. 803(4), requiring no treatment-seeking motive for declarant, was appropriate in civil lawsuit involving sexual abuse); Mosteller I, at 290 (arguing, under the Confrontation Clause, that "when a statement is offered as substantive evidence exclusively on the basis that a medical expert has relied upon it to form [an] opinion, the statement is not within a firmly rooted hearsay exception" without additional evidence of a treatment-seeking motive consistent with common law rule).

{27} In *Woodward,* the declarant of out-of-court statements was unavailable to testify because she had been murdered. 1996–NMSC–012, ¶ 37. Our Supreme Court determined that the deceased victim's statements to a psychologist were properly admitted, and the Confrontation Clause was satisfied, because the medical diagnosis or treatment exception was firmly rooted. *Id.* ¶¶ 37–39. However, in *Woodward,* there was evidence to support both of the traditional common law criteria for recognizing a medical diagnosis or treatment exception to the hearsay rule: "[the victim] made the statements for the purpose of obtaining medical treatment, and ... [the psychologist] reasonably relied on these statements in diagnosing and treating [the victim]." *Id.* ¶ 36. Thus, the Supreme Court did not have to decide whether the medical diagnosis or treatment exception is firmly rooted, for Confrontation Clause purposes, if only one of the common law criteria is present, as in the instant case. Accordingly, we consider this an issue of first impression in New Mexico.

{28} We look first to the United States Supreme Court, which appears to support Defendant's view. In *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the United States Supreme Court noted that "a statement made in the course of procuring medical services, *where the declarant knows that a false statement may cause misdiagnosis or mistreatment,* carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony." *Id.* at 356, 112 S.Ct. 736 (discussing the trustworthiness of hearsay statements for Confrontation Clause purposes) (emphasis added). Although the Court did not discuss the specific requirements of the medical diagnosis or treatment exception at issue, "[t]he [Court's] justification for finding that such statements met the requirements of the Confrontation Clause related to the declarant's frame of mind[.]" Robert P. Mosteller, *The Maturation and Disintegration of the Hearsay Exception for Statements for Medical Examination in Child Sexual Abuse Cases,* 65 Law & Contemp.

Probs. 47, 75 (2002) (hereafter "Mosteller II"). The Court noted that the exception for statements made for medical diagnosis or treatment is a firmly-rooted exception, which is "recognized in Federal Rule of Evidence 803(4), and ... widely accepted among the States." *White,* 502 U.S. at 356 n. 8, 112 S.Ct. 736. Although the Court did not explicitly determine whether the medical diagnosis or treatment exception requires an inquiry into the declarant's motive in order to be considered firmly rooted, the Court did mention the declarant's treatment-seeking motive in discussing the reliability of these particular out-of-court statements.

{29} Moving to a consideration of other jurisdictions, we observe that states vary in their application of the medical diagnosis or treatment exception, but often impose requirements beyond what is required by the language of the federal rules. *See* Mosteller II, at 78–83. Several states exclude out-of-court statements for medical purposes if diagnosis is not connected to, or in contemplation of, treatment. *See id.* at 78–79 nn. 173–75, 112 S.Ct. 736 (citing and discussing La. R. Evid. 803(4); Md. R. Evid. 803(b)(4); Mich. R. Evid. 803(4); Pa. R. Evid. 803(4); Tenn. R. Evid. 803(4); *Low v. State,* 119 Md.App. 413, 705 A.2d 67, 73 (Ct. Spec.App.1998); *State v. Hinnant,* 351 N.C. 277, 523 S.E.2d 663, 669 (2000); *Jenkins v. Commonwealth,* 254 Va. 333, 492 S.E.2d 131, 134–35 (1997)). Some states require a showing of trustworthiness, before a statement to a physician may be admitted. *See* Mosteller II, at 80 n. 180 (citing Miss. R. Evid. 803(4); N.H. R. Evid. 803(4)). Two states have specific rules tailored to the admission of statements made to medical personnel by children who are victims of abuse. *See* Mosteller II, at 80–81 n. 183 (providing that statements to medical personnel are inadmissible if the circumstances indicate a lack of trustworthiness, and citing Cal. Evid.Code § 1252–53 (West 2001)); *see also State v. Jones,* 625 So.2d 821, 824–26 (Fla.1993) (providing additional procedural safeguards to ensure the reliability of statements identifying a perpetrator). Other states have limited the exception to statements made to medical doctors, refusing to admit statements made to other health care professionals, such as psycholo-

gists, counselors, or social workers without a treatment-seeking motive. *See, e.g., State v. Cruz,* 56 Conn.App. 763, 746 A.2d 196, 200–01 (2000) (admitting statements made to social worker only when social worker was acting as a conduit for information to physician and noting that *child was seeking medical diagnosis or treatment*); *State v. Zimmerman,* 121 Idaho 971, 829 P.2d 861, 864 (1992) (noting that child did not make statements to psychologist *for purposes of medical treatment*); *People v. LaLone,* 432 Mich. 103, 437 N.W.2d 611, 613 (1989) (describing reliability inherent in statements made to health care providers, because of a *patient's treatment-seeking motive,* but refusing to extend exception to statements made to a psychologist); *State v. Barone,* 852 S.W.2d 216, 219–20 (Tenn.1993) (same). In examining the limitations these states have placed on the medical diagnosis or treatment exception, we note that the reasoning is often based on an inherent recognition that the patient's treatment-seeking motive goes to the core of why we consider such statements trustworthy.

{30} Federal courts also vary in their interpretation of the medical diagnosis or treatment exception. *See* Mosteller II, at 84–86. For example, the Eighth Circuit has limited the application of the exception when there is no evidence that declarant children had a motive of seeking treatment. *See United States v. Beaulieu,* 194 F.3d 918, 920–21 (8th Cir.1999); *Olesen v. Class,* 164 F.3d 1096, 1097–98 (8th Cir.1999). The Ninth Circuit, in describing the medical treatment exception as "firmly rooted" for Confrontation Clause purposes, has noted that the exception is based on "the presumption of reliability of statements which flow from '*the patient's strong motivation to be truthful.*'" *People v. Ignacio,* 10 F.3d 608, 612 (9th Cir.1993) (quoting Fed.R.Evid. 803(4), advisory committee's note) (emphasis added). On the other hand, the Tenth Circuit has rejected any requirement that a court inquire into a declarant patient's motivation. *See United States v. Joe,* 8 F.3d 1488, 1494 n. 5 (10th Cir.1993) (noting that such statements " 'are made in contexts that provide substantial guarantees of their trustworthiness' "

274

(quoting *White,* 502 U.S. at 355, 112 S.Ct. 736)).

**{31}** After considering these authorities, we conclude that a firmly-rooted exception under the Confrontation Clause, one that is "established historically" and "widely accepted," requires compliance with *both* common law criteria: treatment-seeking motive *and* physician reliance. *Salgado,* 1999–NMSC–008, ¶ 12, 126 N.M. 691, 974 P.2d 661. Like the present case, when only one of the common law criteria is present, the proponent of the statement in a criminal case cannot rely on satisfying evidentiary Rule 11–803(D). In the absence of both common law criteria, the proponent must demonstrate, in addition to satisfying Rule 11–803(D), that the out-of-court statements were made under circumstances having "particularized guarantees of trustworthiness equivalent to those associated with a firmly rooted exception." *Salgado,* 1999–NMSC–008, ¶ 12, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citations omitted). We now turn to that analysis.

### Confrontation Clause Analysis—Particularized Guarantees of Trustworthiness

**{32}** The "particularized guarantees of trustworthiness" required by the Confrontation Clause must be "drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Wright,* 497 U.S. at 820–22, 110 S.Ct. 3139 (noting that, in child sexual abuse cases, reliability must be drawn from circumstances surrounding the statement, such as spontaneity, repetition, the declarant's mental state, use of age-inappropriate terminology, or lack of motive to fabricate). Furthermore, to be admissible under the Confrontation Clause, a hearsay statement "must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Id.* at 822, 110 S.Ct. 3139. As we previously stated in considering Child's statements to her parents under the catch-all exception, which is also not firmly rooted, we determine trustworthiness by analyzing the risk of: "(1) ambiguity; (2) lack of candor; (3) faulty memory; and (4) misperception."

*Lopez,* 2000–NMSC–003, ¶ 17, 128 N.M. 410, 993 P.2d 727.

**{33}** First, we apply these criteria to Child's statements to Nurse Esquibel made while she was examining Child at the emergency room. When Nurse Esquibel asked Child if anyone had touched her, Child pointed to her genital area and said that Defendant had "pinched her cha-cha." When Nurse Esquibel asked Child what she meant, Child pinched her fingers together and said that it hurt. Child's statements to Nurse Esquibel are virtually identical to the statements Child made to her parents, and it was made in a non-suggestive context. Therefore, for reasons similar to those discussed earlier regarding the identical statements made to her parents, we see no risk of ambiguity, lack of candor, faulty memory, or misperception, and we conclude that the statements have sufficient particularized guarantees of trustworthiness to satisfy Confrontation Clause concerns. *Id.*

**{34}** Child also made statements to Dr. Ornelas, who conducted a sexual abuse medical examination on Child four days after the bruise was discovered. When Dr. Ornelas asked Child if anyone had hurt her "down there," while pointing to Child's genitalia, Child nodded, lifted her hospital gown, and identified Defendant. Dr. Ornelas asked Child what Defendant had done. In response, Child pulled on her own labia with her fingers. Dr. Ornelas attempted to question Child further, but Child "didn't want to talk ... anymore." As with the similar statements Child made to her parents and to Nurse Esquibel, we find no ambiguity. Nor do we see any concerns with faulty memory or misperception. However, lack of candor is a closer question.

{35} Defendant contends that Dr. Ornelas asked a leading question when she asked Child if "anyone had hurt her down there," and that this compromised the trustworthiness of Child's statements. Although it would have been preferable if Dr. Ornelas had phrased her question in a less suggestive manner, we think that Dr. Ornelas' question was acceptable, when viewed in light of the totality of the circumstances. The question

was prompted by the presence of the bruise on Child's labia. It did not go so far as suggesting a particular perpetrator or a particular origin for the bruise. Dr. Ornelas also explained that this was "a more general type of question," which could have implicated non-abusive incidents, such as discomfort during diaper changing or an uncomfortable medical procedure. Given the clear and unambiguous statements made by Child, as well as the lack of any evidence that Child had a motive to fabricate or was being coached to give a particular answer, we are satisfied that Child's responses to Dr. Ornelas' questions have sufficient guarantees of trustworthiness to protect Defendant's rights under the Constitution. Thus, admission of those statements into evidence did not violate the Confrontation Clause.

## Jury Instruction

{36} The jury was instructed that it could find Defendant guilty of criminal sexual penetration either by finding that Defendant caused Child "to engage in cunnilingus" *or* by finding that he "caused the insertion, to any extent, of a finger into the vulva and/or vagina of [Child]." *See* NMSA 1978, § 30-9-11(A) (2001). Defendant contends that there was insufficient evidence of cunnilingus and, therefore, the trial court committed reversible error by denying his request that the alternative theory of cunnilingus be stricken from the jury instructions.

{37} We agree with Defendant that the State failed to introduce evidence that Defendant touched Child's genitalia with his mouth. The charge of cunnilingus was based on Mother's speculation that the bruise on Child's labia resembled a "hickey." Two photographs of the bruise were admitted into evidence. Dr. Ornelas testified that, although she could not conclusively rule out that the bruise was caused by oral contact, it was impossible to know what caused the bruise because "a hickey can look like a bruise or a pinch mark can look like a bruise." The State presented no other admissible evidence indicating that Defendant had engaged in cunnilingus with Child. We agree with Defendant that the court erred in allowing the jury to be instructed under this alternate theory. However, that error does not necessarily lead to reversal because of the way Defendant has argued the case on appeal.

{38} Defendant relies primarily on *State v. Salazar,* 1997-NMSC-044, ¶ 43, 123 N.M. 778, 945 P.2d 996, which provides that a general verdict will be upheld if the evidence is sufficient to support either of the theories that form a basis for conviction. *Id.* (citing *State v. Olguin,* 120 N.M. 740, 741, 906 P.2d 731, 732 (1995) (holding that due process does not require a guilty verdict to be set aside if one alternative basis of conviction is only *factually* inadequate to support a conviction)); *Griffin v. United States,* 502 U.S. 46, 49–51, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (finding no due process requirement to set aside general guilty verdict where evidence was inadequate to support a conviction as to one of the alternative theories of the crime presented). This authority is of no help to Defendant if the alternative theory of digital penetration was factually supported by substantial evidence.

{39} Defendant also relies on the likelihood of jury confusion, citing *State v. Parish,* 118 N.M. 39, 41–42, 878 P.2d 988, 990–91 (1994). *See id.* (stating that reversible error arises when "a reasonable juror would have been confused or misdirected"). Defendant argues that the inclusion of a factually unsupported theory in the jury instructions resulted in a strong risk of jury confusion. However, Defendant does not develop this argument or cite additional case law in support of this contention. Defendant's arguments and case law are unpersuasive because there was solid evidence of digital penetration and little indication of any factors suggesting jury confusion. *Cf. State v. DeSantos,* 89 N.M. 458, 462–63, 553 P.2d 1265, 1269–70 (1976) (finding fundamental error and reversing murder conviction where three of four theories included in jury instructions were not supported by the evidence, injecting "an intolerable quantum of confusion ... into the case ... that render[ed] the verdict doubtful if not meaningless").

## Sufficiency of Evidence Under Penetration Theory

{40} In analyzing sufficiency of the evidence, our inquiry is whether substantial

evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to each essential element of a crime charged. *State v. Apodaca,* 118 N.M. 762, 765–66, 887 P.2d 756, 759–60 (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Salgado,* 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). In reviewing an insufficiency claim, we must view the evidence in the light most favorable to the State and indulge all reasonable inferences in favor of the verdict. *State v. Phillips,* 2000–NMCA–028, ¶ 7, 128 N.M. 777, 999 P.2d 421.

{41} We must determine whether there was sufficient evidence that Defendant "caused the insertion, to any extent, of a finger into the vulva and/or vagina of [Child]" with the "intent to arouse or gratify sexual desire, or to intrude upon the bodily integrity or personal safety of [Child]." The jury was instructed that the vulva are the "external parts" of the female sexual organs, "composed of the [labia] major and minor lips, the clitoris and the opening of the vagina."

{42} Child's Mother discovered the bruise on Child's labia immediately after Child had been in Defendant's care. Nurse Esquibel described the mark as a red colored bruise on Child's labia majora that extended inward, past the point where the labia meet in a normal closed position, and a linear abrasion or scratch that moved down toward Child's vaginal opening. Father, who had seen the bruise on Child's labia more immediately afterwards, observed that the mark "went rather deep inside the vagina." Two photographs of the bruise were admitted into evidence. As we discussed above, Child made statements to four different people, indicating that Defendant had pinched her "chacha," and illustrated this statement by making a pinching motion with her fingers or by actually pulling on her labia with her fingers. Both Dr. Ornelas and Nurse Esquibel testified that the bruise was consistent with Child's description of being pinched. Furthermore, Dr. Ornelas testified that children do not typically fall on their genitals and that

the bruise was not, in her opinion, consistent with an injury caused by straddling something. Based on this evidence, a rational jury could reasonably have concluded that Defendant was guilty of criminal sexual penetration under the penetration theory.

**Sufficiency of the Evidence to Support Child Abuse by Endangerment**

{43} The trial court determined that the State had presented a prima facie case of child abuse by endangerment and submitted this theory to the jury, denying Defendant's motion for directed verdict. To find Defendant guilty of child abuse, the jury was instructed that it must find that "[D]efendant acted with reckless disregard[,] ... knew or should have known [his] conduct created a substantial and foreseeable risk, ... disregarded that risk and ... was wholly indifferent to the consequences of the conduct and to the welfare and safety of [Child]." *See* NMSA 1978, § 30–6–1(D) (2001) (criminalizing knowing, intentional, or negligent conduct that, "without justifiable cause, caus[es] or permit[s] a child" to be "placed in a situation that may endanger the child's life or health"). Abuse of a child that does not result in death or great bodily harm is, for a first offense, a third degree felony. *Id.*

{44} According to Mother, Defendant said he had been walking Child in the stroller when the stroller fell off the sidewalk and tipped over, causing Child to bump her head. Defendant who had been wearing flip-flop sandals, apparently lost control of the stroller. When Mother returned home, Defendant had applied ice to the bump on Child's forehead to reduce the swelling. When Mother asked Child what had happened, Child confirmed that she had bumped her head when she fell from the stroller. At trial, Mother explained that, the stroller can roll off anything that is not level if the brake is not properly collapsed. Mother stated that, although she was concerned about the bump, she was not suspicious about the fall from the stroller and viewed it as accidental. Mother explained: "I think that things happen. Things happen when I take care of [Child]." Likewise, Father's testimony was focused on the bruise to Child's labia and

made only brief mention of the bruise on Child's forehead, which Father agreed was caused by her falling out of the stroller. Officer Sedillo testified that Defendant said he had been walking Child when the stroller "got away from him and tipped over." According to Officer Sedillo, Defendant said he was pushing the stroller out in front of him and calling out to Child, "hey, where are you going," when the stroller hit a rut near a curb and tipped over. Defendant maintained that the incident was purely accidental and the State presented no evidence to the contrary.

{45} A conviction for child abuse by endangerment cannot be based on "a mere possibility, however remote, that harm may result from Defendant's acts; instead, we conclude that the legislature intended [to punish conduct that created] 'a reasonable probability or possibility' that the child will be endangered." *State v. Ungarten,* 115 N.M. 607, 609, 856 P.2d 569, 571 (Ct.App. 1993) (citation omitted). Our Supreme Court has determined that "the child abuse statute contains no indication that the legislature intended felony punishment to attach to ordinary negligent conduct." *Santillanes v. State,* 115 N.M. 215, 223, 849 P.2d 358, 366 (1993) (construing the statute as requiring a showing of criminal, rather than civil, negligence).

{46} Recently, we noted that "[i]n making this offense a third degree felony, the legislature intended to address conduct with potentially serious consequences to the life or health of a child." *State v. Trujillo,* 2002–NMCA–100, ¶ 21, 132 N.M. 649, 53 P.3d 909. In *Trujillo,* 2002–NMCA–100, ¶ 22, 132 N.M. 649, 53 P.3d 909, we reversed the conviction for child abuse by endangerment and also noted that "the legislature has created a civil process whereby, through abuse and neglect proceedings, the interests of children may be protected, regardless of whether the threatened danger meets the higher threshold required for a criminal conviction." *See generally* Children's Code, Abuse and Neglect Act, NMSA 1978, §§ 32A–4–1 to –33 (1993, as amended through 2001); *Santillanes,* 115 N.M. at 221, 849 P.2d at 364 (stating that statutes defining criminal conduct must be strictly construed). As the Ohio Court of Appeals recently noted, if "imprudent and possibly negligent" conduct were sufficient to expose a care giver to criminal liability for child endangerment, "undoubtedly the majority of parents in this county would be guilty of child endangering—at least for acts of similar culpability." *State v. Massey,* 128 Ohio App.3d 438, 715 N.E.2d 235, 238–39 (1998) (reversing child abuse conviction where two-and-a-half-year-old child was left in a bathtub between thirty seconds and four minutes, and stating that although there might have been some speculative risk to child, the mother's conduct did not create a strong possibility of harm).

{47} Although it was imprudent for Defendant to push the stroller out ahead of him, apparently beyond his reach, there was no evidence that Defendant "acted with reckless disregard, . . . created a substantial and foreseeable risk, . . . [and] was wholly indifferent . . . to the welfare and safety of [Child]." Our review of the record leads us to conclude that Defendant's conviction for child abuse by endangerment is not supported by substantial evidence and must be reversed.

## Impeachment by Prior Conviction and the Right to Testify

{48} Defendant, who was convicted in California in 1983 and 1986 for lewd acts on a child, filed a motion in limine to exclude evidence of these prior convictions. The trial court agreed that the 1983 conviction could not be used at trial because it was remote. *See* Rule 11–609(B) NMRA 2002 (providing that evidence of a conviction shall only be admissible if no more than ten years have elapsed since the date of conviction or the date of release from confinement for the conviction). However, the court ruled that the 1986 conviction, which resulted in Defendant being incarcerated until 1994, would be admissible for impeachment purposes under Rule 11–609's ten-year requirement if Defendant took the stand. Faced with the prejudice of impending impeachment, Defendant elected not to testify, and the evidence of Defendant's prior conviction was not submitted to the jury.

{49} Defendant argues that he was deprived of the right to testify in his own defense when the trial court ruled that his 1986 conviction would be admissible to impeach him. Rule 11–609(A)(1) provides in relevant part:

[E]vidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 11–403, if the crime was punishable by death or imprisonment in excess of one (1) year under the law under which the witness was convicted, and *evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.*

(Emphasis added.)

{50} We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Woodward*, 1996–NMSC–012, ¶ 6, 121 N.M. 1, 908 P.2d 231; *see also Jaramillo v. Fisher Controls Co.*, 102 N.M. 614, 622–23, 698 P.2d 887, 895–96 (Ct.App.1985) (indicating that abuse of discretion is the proper standard of appellate review where it is contended that the prejudicial nature of a prior conviction outweighed its probative value). We disagree that the trial court's ruling on the admissibility of Defendant's prior conviction necessitates de novo review by this Court, for application of law to the facts. *Cf. State v. Attaway*, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994) (describing application of law to the facts); *State v. Elinski*, 1997–NMCA–117, ¶ 8, 124 N.M. 261, 948 P.2d 1209 (applying de novo review where there was a "misapprehension of the law"). We have no reason to believe that the trial court's ruling was based on a misapprehension of the law.

{51} At a pretrial hearing, the trial court considered whether evidence of Defendant's 1986 conviction should be admitted merely for impeachment purposes or independently as substantive evidence to prove the intent element of criminal sexual penetration. Ruling in Defendant's favor, the court held that the State could not use evidence of Defendant's prior conviction in its case in chief because it would constitute improper propensity evidence. The court limit-ed use of the 1986 conviction to impeachment under Rule 11–609, if Defendant chose to testify and denied having any sexual intent toward Child. *See State v. Wyman*, 96 N.M. 558, 560, 632 P.2d 1196, 1198 (Ct.App.1981) (stating that evidence admissible for one purpose is not excluded because it is inadmissible for another purpose). According to the trial court, if Defendant testified that any touching of Child was the result of playful wrestling, such that Child was bruised accidentally, that would "make[ ] intent under [Rule 11–609] highly relevant and ... the probative value would outweigh the prejudicial value under [Rule] 11–609." "Because a determination of unfair prejudice is fact sensitive, 'much leeway is given trial judges who must fairly weigh probative value against probable dangers.'" *Woodward*, 1996–NMSC–012, ¶ 19, 121 N.M. 1, 908 P.2d 231 (quoting 1 Kenneth S. Broun et al., *McCormick on Evidence* § 185, at 783 (John W. Strong ed., 4th ed.1992) (footnote omitted)).

{52} Although the trial court explicitly ruled that Defendant's 1986 conviction was *not* admissible as substantive evidence under Rule 11–404 NMRA 2002, Defendant persists in characterizing the court's ruling as improper under Rule 11–404(B). Arguing this issue on appeal, Defendant relies exclusively on case law that analyzes the admissibility of prior bad acts, as substantive character evidence under Rule 11–404. We do not find this authority germane to our analysis of the admissibility of a prior conviction for impeachment purposes.

{53} As the trial court pointed out, "there is a thin line that separates credibility and character a lot of [the] time. They do measure with one another." However, the record demonstrates that the trial court carefully considered the admissibility of Defendant's prior conviction under both Rule 11–404 and Rule 11–609, before ultimately determining that the prejudicial impact of Defendant's prior conviction would be outweighed by its probative value only if it were limited to impeachment purposes, pursuant to Rule 11–609. We reject Defendant's contention that the court's ruling should be analyzed under Rule 11–404(B) and consider only whether the court abused its discretion in ruling that

Defendant's prior conviction would be admissible for impeachment purposes under Rule 11–609.

{54} Defendant argues that, because the 1986 conviction did not involve dishonesty, its probative value was outweighed by the risk of unfair prejudice. *See* Rule 11–609(A)(1). However, Rule 11–609 contemplates the admission into evidence of felony convictions, regardless of whether they concern dishonesty or false statement. *See* Rule 11–609(A)(1). We have noted that "[t]he Supreme Court's adoption of Rule [11–]609 is tantamount to a determination that any felony punishable by imprisonment in excess of one year bears on credibility." *State v. Lucero,* 98 N.M. 311, 313, 648 P.2d 350, 352 (Ct.App.1982).

{55} It is well established that, although

> an accused may hesitate to take the witness stand if his past criminal record is such that his credibility will probably be completely destroyed in the eyes of the jury . . . , [h]owever, this in no way impairs his right against self-incrimination, his right not to be deprived of his life, liberty or property without due process of law, nor his right to a public trial by an impartial jury.

*State v. Lindsey,* 81 N.M. 173, 181, 464 P.2d 903, 911 (Ct.App.1969). "When an accused takes the witness stand he is in the same position as any other witness. He is not entitled to have his testimony falsely cloaked with reliability by having his credibility protected against the truthsearching process of cross-examination." *Id.* (citation omitted); *see also State v. Duran,* 83 N.M. 700, 701–02, 496 P.2d 1096, 1097–98 (Ct.App. 1972) (stating that it did not violate due process to allow evidence of prior convictions, despite the defendant's contention that such evidence prejudiced his right to testify); *State v. Silver,* 83 N.M. 1, 2, 487 P.2d 910, 911 (Ct.App.1971) (same). We determine that the trial court did not abuse its discretion in ruling that Defendant's prior conviction could be admitted for impeachment purposes.

{56} The State argues that, because Defendant did not testify, he failed to preserve his claim that the trial court erred in ruling that evidence of his prior conviction was admissible to impeach his credibility. *See Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (applying the Federal Rules of Evidence and holding that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify"). However, because we determine that Defendant's claim has no merit, we need not decide whether *Luce* would apply in interpreting the New Mexico Rules of Evidence. *See State v. Torres,* 1998–NMSC–052, ¶ 12, 126 N.M. 477, 971 P.2d 1267 ("[W]e are not bound in our interpretation of our Rules of Evidence by the United States Supreme Court's interpretation of analogous provisions in the Federal Rules of Evidence.").

**Continuance of Life Enhancement Sentencing Proceeding**

{57} Finally, Defendant argues that the trial court erred by granting a continuance of the life enhancement sentencing proceeding and asks this Court to dismiss the life enhancement charge with prejudice. NMSA 1978, § 31–18–25(B) (1997) provides that a defendant convicted of a second violent sexual offense against a child under the age of thirteen shall be punished by a sentence of life imprisonment without the possibility of parole. For purposes of life enhancement, a "violent sexual offense" is an offense that would constitute either first or second degree criminal sexual penetration in the State of New Mexico. *See* § 31–18–25(F); *see also* § 30–9–11(C), (D) (describing criminal sexual penetration). The statute provides that a life enhancement sentencing proceeding shall be conducted "as soon as practicable" by the original trial judge. NMSA 1978, § 31–18–26(B) (1996).

{58} Defendant argues that the trial court misinterpreted the statute. This presents an issue of statutory construction that we review de novo. *See State v. Guerra,* 2001–NMCA–031, ¶ 6, 130 N.M. 302, 24 P.3d 334.

{59} Prior to trial, the State filed a notice of intent to seek a life sentence enhancement based on Defendant's previous convictions for lewd acts on a child. The initial sentenc-

ing hearing, which was to be combined with the life enhancement proceeding, was scheduled for March 13, 2001, but was continued to March 22, 2001, due to a medical emergency. At the rescheduled hearing, counsel for the State said that he had not received adequate notice of the rescheduled hearing date and was unprepared to proceed with the life enhancement proceeding at that time. The court proceeded with sentencing Defendant for his convictions, but granted a continuance of the life enhancement proceedings. Defendant filed a notice of appeal on May 16, 2001. As of the time of briefing, nine months had passed since the sentencing hearing and the State had not yet rescheduled the life enhancement proceeding. Defendant argues that this delay has caused him immeasurable anxiety and stress and has also violated his due process rights and his rights to a speedy trial under the United States and New Mexico Constitutions. *See* U.S. Const. amends. V, VI, XIV; N.M. Const. art. II, §§ 14, 18.

■ {60} Defendant points out that the "as soon as practicable" language in the life enhancement statute mirrors similar language in the capitol felony sentencing statute, whereas the habitual offender statute places no explicit time limitations on the initiation of habitual offender proceedings. *Compare* § 31–18–26(B) (providing that life enhancement proceedings must be conducted "as soon as practicable"), *with* NMSA 1978, § 31–20A–1(B) (1979) (providing that capitol felony sentencing proceedings must be conducted "as soon as practicable"), *and* NMSA 1978, § 31–18–20 (1983) (describing habitual offender proceedings, without specifying a time limitation). Defendant also notes that a life enhancement sentence results in more serious consequences than a habitual offender sentence. Because Rule 5–604(B) NMRA 2002 requires that habitual offender proceedings must be commenced within six months of the last of a number of triggering events, Defendant appears to argue that the "as soon as practicable" language in the life enhancement statute must mean no more than six months. We are not persuaded. We agree with Defendant that the statutory language "as soon as practicable" means that the life enhancement proceeding must be conducted without undue delay. However, we find no

support for his assertion that the Legislature intended to impose a specific time limitation on the commencement of life enhancement proceedings.

■ {61} Traditionally, the right to a speedy trial protects against oppressive pretrial incarceration, anxiety, and concern of the accused and the possibility of impairment to the defense. *State v. Todisco*, 2000–NMCA–064, ¶ 23, 129 N.M. 310, 6 P.3d 1032. However, " 'a delay in sentencing involves considerations different from those related to pre-trial delay.' " *Id.* (quoting *Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir.1986)). "Most of the interests designed to be protected by the speedy trial guarantee 'diminish or disappear altogether once there has been a conviction,' and 'the rights of society proportionately increase[.]' " *Id.* (quoting *Perez*, 793 F.2d at 256). In order to prevail with a speedy sentencing claim, not only must a defendant have been prejudiced, but the prejudice claimed by a defendant must be " 'substantial and demonstrable.' " *Id.* (quoting *Perez*, 793 F.2d at 256). There must also be evidence of a "nexus between the undue delay and the prejudice claimed." *Id.* ¶ 29.

{62} Similarly, in order to prevail on a due process claim related to a delay in such proceedings, a defendant " 'must prove prejudice and an intentional delay by the State to gain a tactical advantage.' " *Id.* ¶ 30 (quoting *State v. Gibson*, 113 N.M. 547, 559, 828 P.2d 980, 992 (Ct.App.1992)). This prejudice must be " 'actual' and 'substantial.' " *Id.* (quoting *Gibson*, 113 N.M. at 559, 828 P.2d at 992).

{63} Defendant has failed to demonstrate that he has suffered actual prejudice in connection with the continuance of the life enhancement proceeding or that this delay violated his rights to due process or a speedy trial. Accordingly, we deny Defendant's request that the life enhancement charges be dismissed.

**Cumulative Error**

{64} Defendant argues that, because of "the significant number of errors" made by the trial court, we should find that their cumulative impact deprived him of a fair trial and reverse his convictions. *See State v.*

*Baca,* 120 N.M. 383, 392–93, 902 P.2d 65, 74–75 (1995) (describing doctrine of cumulative error). We find error as to the conviction for child abuse, and reverse that conviction herein. The doctrine of cumulative error does not apply.

**CONCLUSION**

{65} We reverse Defendant's conviction for child abuse by endangerment, affirm the trial court in all other respects, and remand for re-sentencing.

{66} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and JONATHAN B. SUTIN, Judges.